**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FELECIA TAYLOR, *Individually, and as* )<br>*legal guardian of minor children, D.B. and T.B.* )<br>6101 Landover Road )<br>Cheverly, MD 20785 )<br>Hyattsville, MD 20781 )<br> )<br>Plaintiffs, )<br> )<br>v.                                )<br> )<br>DISTRICT OF COLUMBIA, *et al.* )<br>441 4th Street, NW, Suite 1110 )<br>Washington, DC 20001 )<br> )<br>*Serve*: )<br> )<br>Hon. Mayor Adrian M. Fenty )<br>Executive Office of the Mayor )<br>John A. Wilson Building )<br>1350 Pennsylvania Avenue, N.W., Suite 310 )<br>Washington, DC 20004 )<br> )<br>Office of the Attorney General )<br>for the District of Columbia )<br>441 4th Street, N.W. )<br>6th Floor South )<br>Washington, DC 20001 )<br> )<br>-and- )<br> )<br>OLIVIA GOLDEN, )<br>2100 M Street, NW )<br>Washington, DC 20037 )<br> )<br>-and- )<br> )<br>LLOYD J. JORDON )<br>941 North Capitol Street, N.E. )<br>Washington, DC 20002 )<br> )<br>-and- )  | Case No: 1:08-cv-00578<br>Judge: Henry H. Kennedy<br>Assign. Date: 4/3/2008<br>Description:   Civil Rights-Non<br>                    Employment |

ELANOR SANDERS )
400 6th Street, S.W. )
Washington, D.C. 20024 )
                                              )
-and- )
                                              )
EARL CHARLTON )
10122 Daileysburg Lane )
Nokesville, VA 20181 )
                                              )
-and- )
                                              )
L.L. CHARLTON )
10122 Daileysburg Lane )
Nokesville, VA 20181 )
                                              )
-and- )
                                              )
THOMAS D. WALSH, Inc. )
3406 Connecticut Ave NW )
Washington, D.C. 20008 )
                                              )
     *Serve:* )
                                              )
     Daniel E. Walsh )
     3333 Connectcut Avenue, N.W. )
     Suite B )
     Washington, D.C. 20008 )
                                              )
ANNIE MILLOY )
5527 9TH Street, NW )
Washington, DC 20009 )
                                              )
           Defendants. )
_____)

## **AMENDED COMPLAINT**

**COMES NOW** Plaintiff, Felecia Taylor (hereinafter referred to as, "Plaintiff Taylor"), individually, and as legal guardian, and on behalf of, minor child D.B. (hereinafter referred to as, "Plaintiff D.B.") and minor child, T.B. (hereinafter referred to as, "Plaintiff T.B.") by and through the undersigned counsel, and makes this Complaint on against Defendants District of Columbia (hereinafter referred to as "Defendant D.C.");

Olivia Golden (hereinafter, referred to as "Defendant Golden"); Lloyd J. Jordan (hereinafter, referred to as "Defendant Jordan"); Eleanor Sanders (hereinafter referred to as "Defendant Sanders"); Earl Charlton (hereinafter referred to as "Defendant Earl Charlton"); Defendant L.L. Charlton (hereinafter referred to as Defendant L.L. Charlton"); Defendant Thomas D. Walsh, Inc. (hereinafter referred to as Defendant Walsh, Inc."); and Defendant Annie Milloy (hereinafter referred at as "Defendant Milloy").

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action in that the action includes a claim involving a federal question.

2.      This Court has personal jurisdiction over Defendants in that the tortious injury occurred in the District of Columbia by act or omission.

## PLAINTIFFS

3.      Plaintiff Taylor is the adult legal guardian for minor Plaintiffs D.B. and T.B.  She currently resides in Prince George's County, Maryland.

4.      Plaintiff D.B. is a minor child who came into the custody of the District of Columbia on or around May 24, 2000.  He is currently in the care of Plaintiff Taylor in Prince George's County, Maryland.

5.      Plaintiff T.B. is a minor child who came into the custody of the District of Columbia on or around May 24, 2000.  He currently in the care of Plaintiff Taylor in Prince George's County, Maryland.

## **DEFENDANTS**

6.      Defendant D.C., a municipality and a "person" acting under the color of statute, is subject to direct liability pursuant to 42 U.S.C. §1983.  In addition, Defendant D.C. is responsible for the policies, practices, and operation of the Department of Consumer and Regulatory Affairs (hereinafter referred to as "DCRA") and Child and Family Services Administration (hereinafter referred to as "CFSA").  Moreover, as the employer of Defendants Golden, Jordan, and Sanders, Defendant D.C. was required by *inter alia* its own statutes and/or regulations to provide adequate training and supervision to its employees with regard to the importance of strict adherence to DCRA and CFSA's regulations and general orders, including specifically with respect to the placement of children in foster care homes.

7.      At all times relevant herein Defendant Golden was the Director and decision maker of CFSA, responsible for identifying and licensing appropriate, safe, and secure placements and foster parents for children in the District of Columbia's foster care system, and is responsible for placing children, including Plaintiffs D.B. and T.B, into identified foster care placements; and/or maintaining proper oversight of all foster care facilities and parents in order to ensure the safety of Plaintiffs and children in the foster care system.  On information and belief, Defendant Golden is an adult resident of the District of Columbia.

8.      At all times relevant herein Defendant Jordan was the Director and decision maker of DCRA who was responsible for identifying and licensing appropriate, safe, and secure placements and foster parents for children in the District of Columbia's foster care system, and was responsible for placing children, including Plaintiffs D.B. and T.B., into identified foster care placements; and/or maintaining proper oversight of all

foster care facilities in order to ensure the safety of Plaintiffs and children in the foster care system.  On information and belief, Defendant Jordan is an adult resident of the District of Columbia.

9.      At all times relevant herein Defendant Sanders was a social worker at CFSA, responsible for ensuring the safety of Plaintiff D.B. and T.B.'s foster care, reporting on any health or safety hazards which may present a danger to Plaintiffs and to take all reasonable steps, including, but not limited to, relocating Plaintiffs, to prevent harm and/or the continuation of harm to Plaintiffs.  On information and belief Defendant Sanders is an adult resident of the District of Columbia.

10.     At all times relevant herein Defendant Earl Charlton was the co-owner of the property located at 5527 9th Street, N.W., Washington, D.C. and is an adult resident of the District of Columbia.

11.     At all times relevant herein Defendant L.L. Charlton was the co-owner of the property located at 5527 9th Street, N.W., Washington, D.C. and is an adult resident of the District of Columbia.

12.      At all times relevant herein Defendant Thomas D. Walsh, Inc. was the property management company licensed to conduct business in the District of Columbia with its principal place of business located at 3406 Connecticut Ave NW, Washington, D.C. 20008 and responsible for managing the property located 5527 9th Street, N.W., Washington, D.C.  20009 (hereinafter referred to as the "Property").

13.     At all times relevant herein Defendant Milloy was the foster care provider for Plaintiffs D.B. and T.B. and resided with Plaintiff D.B. and T.B. at the Property. Defendant Milloy is an adult, who, upon information and belief, continues to reside at the Property.

## FACTUAL BACKGROUND

14.    On or about May 24, 2000, as a result of concerns for their health and welfare, Plaintiffs D.B. and T.B. were removed from the custody of their birth mother and taken into the care and custody of Defendant D.C. pursuant to D.C. Code §16-2309, at which time they were both entered into Defendant D.C.'s neglect system.

15.    On or about June 27, 2000, after Plaintiffs D.B. and T.B.'s birth mother absconded, Defendant D.C., through DCRA, placed Plaintiffs in foster care with Defendant Milloy at the Property.

16.    At the time Plaintiffs D.B. and T.B. were initially placed in the care of Defendant Milloy, DCRA was responsible for licensing foster care homes, including, Defendant Milloy's home.

17.    As Director of DCRA, Defendant Jordan maintained full decision making authority and/or established the customs, policies and procedures regarding licensing Defendant Milloy as a foster parent and the licensing of the Property as an eligible foster care placement.  Moreover, Defendant Jordan maintained decision making authority and/or established the customs, policies and procedures regarding the placement and/or maintenance of Plaintiffs D.B. and T.B. in the care of Defendant Milloy.

18.    In or around October, 2001 CFSA assumed responsibility for licensing foster care homes in the District of Columbia, including Defendant Milloy's home.

19.    As Director of CFSA, Defendant Golden maintained full decision making authority and/or established the customs, policies and procedures regarding licensing or continued licensing of Defendant Milloy as a foster parent and the licensing or continued licensing of the Property as an eligible foster care placement after October, 2001. Moreover, Defendant Golden maintained decision making authority and/or established

the customs, policies and procedures regarding the continued placement and supervision of Plaintiffs D.B. and T.B. in the care of Defendant Milloy.

20.    At all times relevant herein, Defendant Milloy was a tenant at the Property that was owned by Defendants Earl Charlton and L.L. Charlton, and managed by Defendant Walsh, Inc.

21.    According to Defendant D.C.'s own report entitled "History of Lead Exposure for [D.B.] and [T.B.]" dated April 3, 2004 (hereinafter referred to as "Lead Exposure Report"), while in Defendant Milloy's home, "[t]he records indicated that [the children's] lead levels were being followed on a regular basis either at the Upper Cardoza Health Center or by the DOH lead team."

22.    As further stated in the Lead Exposure Report, each and every blood lead level test conducted on either Plaintiff D.B. or T.B. during the time they resided in the care of Defendant Milloy at the Property evidenced "sustained blood lead levels for 2-4 times the upper normal limits . . . [with] [t]he highest levels for both children [appearing] in August of 2002."

23.    Despite Plaintiff D.B. and T.B.'s excessively high blood lead levels, evidenced by their "regular" lead level tests conducted while they were in the care of Defendant Milloy at the Property, no action was taken by any Defendant to remedy the dangerous condition and/or remove Plaintiffs from the hazardous environment.

24.    However, on or about September 10, 2002, while Plaintiffs D.B. and T.B remained in the foster home of Defendant Milloy, Defendant D.C. did complete a lead inspection test on the Property.

25.    The results of the September 10, 2002 lead inspection test received by Defendants D.C., Golden, Jordan, and Sanders unequivocally established the existence of lead-based paint hazards on the Property.

26.    On October 17, 2002, via a written "Notice of Defect" from Defendant D.C., Defendants Earl Charlton, Defendant L.L. Charlton, Defendant Walsh, Inc., and Defendant Milloy were all notified that Defendant D.C.'s September 10, 2002 lead inspection test revealed that "lead-based paint hazards [had] been identified on [the] property." Via Defendant D.C.'s "Notice of Defect," the aforementioned Defendants were "directed to correct the lead-based paint hazard" which would be considered complete "when all lead-based paint hazards identified on the premises [had] been corrected." Defendant D.C. further stated in its "Notice of Defect" that "[a] clearance inspection certificate issued by a risk assessor must be submitted to [the Department of Health] as proof of successful completion in order to obtain a Certificate of Lead-Based Paint Compliance from the District of Columbia."

27.    The notice required that the lead based paint hazard be corrected within 10 days, and afforded the opportunity for a 30-day extension.

28.    However, subsequent to Defendant D.C. issuing its "Notice of Defect," and despite each Defendants' knowledge of the existing lead-based paint hazard; Plaintiffs D.B. and T.B.'s respectively high blood lead level, and; Plaintiffs D.B. and T.B. continuing exposure to the existing lead based paint hazards at the Property, each Defendant failed to take the necessary and proper actions to ensure remedy the hazardous condition on the Property and/or protect the health, safety, and welfare of Plaintiffs D.B. and T.D.

29.     On information and belief Defendants Earl Charlton, Defendant L.L. Charlton, Defendant Walsh, Inc., and Defendant Milloy failed to: (1) correct and/or attempt to correct the lead-based paint hazard; (2) seek, obtain, or submit to the Department of Health a clearance inspection certificate issued by a risk assessor; or (3) obtain a Certificate of Lead-Based Paint Compliance from the District of Columbia.

30.     On information and belief, Defendants D.C., Golden, Jordan, and Sanders failed to require compliance with Defendant D.C.'s "Notice of Defect."

31.     Despite Defendants D.C., Golden, Jordan, and Sanders, having failed to follow up on compliance with Defendant D.C.'s "Notice of Defect" and having never certified that the Property was safe from lead-based paint hazards (by requiring a Clearance Inspection Certificate be filed with the Department of Health), Defendants permitted Plaintiffs D.B. and T.B. to continue to reside at the in the care of Defendant Milloy at the Property for an additional six (6) months from the date of the home lead inspection, until March, 2003.

32.     In total, Plaintiffs D.B. and T.B. resided in the care of Defendant Milloy, at the Property, wherein they were continuously exposed to hazardous levels of lead based paint for a period of nearly three (3) years.

33.     Having permitted Plaintiffs D.B. and T.B. to continue to reside in the care of Defendant Milloy at the Property, Defendants, with knowledge of the risks, failed to take the reasonable and necessary actions to protect Plaintiffs D.B. and T.B. from a known lead based paint hazard for the entire period in which they resided at the Property.

34.     Moreover, despite knowledge that Plaintiffs D.B. and T.B. were each suffering from elevated blood lead levels, two to four times the acceptable limits, each Defendant failed to take any action whatsoever to provide Plaintiffs D.B. and T.B. with

treatment for lead poisoning for approximately three years from the date of discovery, including the entire time in which Plaintiffs were in the care of Defendant Milloy at the Property.

35.    While residing with Defendant Milloy, Plaintiffs D.B. and T.B. were involuntarily exposed, on numerous occasions, to substantial adult sex acts between Defendant Malloy and male companions, and it has been further alleged that while in the care of Defendant Milloy, Plaintiffs were themselves sexually assaulted.

36.    In or around March, 2003, solely as a result of having exposed Plaintiffs D.B. and T.B. to adult sex acts and/or other improper behavior and conduct by Defendant Milloy, and having nothing to do with Plaintiffs D.B. and T.B.'s continuing exposure to lead based paint, Defendant D.C., Defendant Golden, and Defendant Sanders finally removed Plaintiffs from Defendant Malloy's custody.

37.    In or around March, 2003 Plaintiffs were both placed in foster care in the custody of Plaintiff Taylor with whom they continue to reside.

38.    At all times material hereto, all Defendants were aware of the hazardous conditions and/or circumstances that Plaintiffs D.B. and T.B. were exposed to while in the care of Defendant Milloy at the Property.

39.    By placing and/or maintaining Plaintiffs D.B. and T.B. in the care of Defendant Milloy at the Property, Defendants failed to provide Plaintiffs with a safe and secure living environment.

40.    The actions and/or inactions of Defendants were ongoing and pervasive, and were carried out with intent and/or knowledge, with malicious, reckless, wanton and/or negligent conduct.

41.    The actions and/or inactions of Defendant Golden were committed in the course of her employment and/or agency with Defendant D.C. in her capacity as Director of CFSA and while she possessed and implemented decision and policy making authority regarding the placement, care, treatment, and well being Plaintiffs D.B. and T.B., Defendant Golden's actions were ongoing and pervasive in nature, and were carried out with intent and/or knowledge, with malicious, reckless, wanton and/or negligent conduct.

42.    The actions and/or inactions of Defendant Jordan were committed in the course of his employment and/or agency with Defendant D.C. in his capacity as Director of DCRA and while he possessed and implemented decision and policy making authority regarding the placement, care, treatment, and well being Plaintiffs D.B. and T.B., Defendant Jordan's actions were ongoing and pervasive in nature, and were carried out with intent and/or knowledge, with malicious, reckless, wanton and/or negligent conduct.

43.    The actions and/or inactions of Defendant Sanders were committed in the course of her employment and/or agency with Defendant D.C. as a social worker for CFSA and while she possessed and implemented decision and policy making authority regarding the placement, care, treatment, and well being Plaintiffs D.B. and T.B. Defendant Sanders' actions were ongoing and pervasive in nature, and were carried out with intent and/or knowledge, with malicious, reckless, wanton and/or negligent conduct.

44.    The actions and/or inactions of Defendants Earl Charlton, L.L. Charlton, Defendant Walsh, Inc., and Defendant Milloy were committed with intent and/or knowledge, and with malicious, reckless, wanton and/or negligent conduct and in violation of the standard of care, and the Municipal Regulations of the District of Columbia.

45.    As the owner, tenant, and/or manager of the Property, Defendants Earl Charlton and L.L. Charlton, Defendant Walsh, Inc., and Defendant Milloy had an affirmative duty to inspect, remedy, and/or otherwise ensure that the Property was free from lead compounds in a quantify sufficient to constitute a hazard.

46.    Defendants Earl Charlton, L.L. Charlton, Defendant Walsh, Inc., and Defendant Milloy were each aware that children under eight (8) years of age were being placed in Defendant Milloy's care at the Property where there existed a lead based paint hazard from or around June, 2000, and were each reminded of this fact via Defendant D.C.'s October 17, 2002 "Notice of Defect".

47.    Despite knowledge of the existence of a lead based paint hazard and the fact that minor children under 8 years old were residing at the Property, Defendants Earl Charlton, L.L. Charlton, Walsh, Inc., and Milloy each failed to take the necessary actions to remedy the dangerous condition.

48.    The additional actions of Defendant Milloy, wherein Plaintiffs were exposed to adult sex acts and/or sexually assaulted were committed with intent and/or knowledge, and with malicious, reckless, wanton and/or negligent conduct and in violation of the standard of care and Municipal Regulations of the District of Columbia.

49.    Defendant D.C. through its employees Defendants Golden, Jordan, and Sanders were at all times relevant herein responsible for the care and well being of the minor child, including Plaintiffs D.B. and T.B., who were in their foster care system.

50.    Defendants D.C., Golden, Jordan, and Sanders failed to properly screen and/or assess either Defendant Milloy or the Property prior to placing Plaintiff D.B. and T.B. in her care at the Property.  At the time Plaintiff D.B. and T.B. were placed in Defendant Milloy's care at the Property, a lead based paint hazard already existed.  But

for Defendant Golden, Jordan, and/or Sanders failure to exert reasonable efforts to assess the potential and knowable dangers that existed at the Property prior to and/or subsequent to placing Plaintiff D.B. and T.B. in Defendant Malloy's care; and/or failing to take the necessary and reasonable steps to remedy the defect/harm, Plaintiffs would not have been injured.

51.     Furthermore, upon assuming licensing control for foster homes in October, 2001, Defendants D.C., Golden and Sanders failed to conduct any independent assessment and/or verification regarding the licensing of Defendant Milloy personally and/or the Property; Defendant D.C., Golden and Sanders furthermore failed to conduct its own lead based paint assessment on the Property for nearly a year after assuming licensing control of the Property.  Additionally, Defendants D.C., Golden, and Sanders also failed to perform their own reasonable and necessary background checks and/or licensing requirements on Defendant Milloy and/or the Property before and/or after assuming licensing control for foster homes in October, 2001.  Despite having assumed responsibility for licensing foster homes in October, 2001, according to CFSA's own History of Lead Report, as late as April 3, 2004, the agency acknowledged that "the [foster home] licensing requirements for DCRA [remained] unknown."  Having failed to determine what, if any, licensing requirements were in place at the time Defendant Milloy and the Property received foster care approval, and by having failed to initiate their own licensing procedure/requirements, Defendants D.C., Golden, and Sanders wholly failed to take the necessary and reasonable steps required to reasonable ensure Plaintiffs safety and well being in the care of Defendant Milloy at the Property.

52.     Defendants knew or should have known that Defendant Milloy would not act reasonably in her care for Plaintiffs D.B. and T.B., including, but not limited to,

exposing the minor Plaintiffs to inappropriate and severely damaging stimuli, including adult sexual acts and/or assaulting Plaintiffs.

53.    Defendants knew or should have known of the risks of harm presented to Plaintiffs, including injuries resulting from exposure to lead based paint and injuries caused through the actions of Defendant Milloy, prior to placing Plaintiffs in Defendant Milloy's custody and/or at the Property.

54.     Defendants had further reason to know of the harm being caused to Plaintiffs D.B. and T.B. as a result of their repeatedly elevated blood lead levels, evidenced by the regular blood tests completed during the time they were in the care of Defendant Milloy at the Property.

55.    Defendants were further made aware of the harm to which Plaintiffs D.B. and T.B. were being exposed to as a result of Defendant D.C.'s lead inspection test of the Property completed on September 10, 2002 and/or through Defendant D.C.'s October 17, 2002 "Notice of Defect".

56.    Despite each Defendant's knowledge of the dangers that Plaintiffs D.B. and T.B. were being exposed to, each Defendant willfully and/or recklessly ignored these risks by failing to take the reasonably necessary and appropriate actions to protect Plaintiffs and/or remedy the known risks.

57.    By failing to take the reasonably necessary and appropriate actions to protect Plaintiffs and/or remedy the known risks Defendants' actions and/or inactions caused each Plaintiffs injuries as set forth herein.

58.    Defendants D.C., Golden, Jordan, and Sanders each showed deliberate indifference toward each Plaintiff's Constitutional rights not to be harmed while in state custody.

59.    After having been removed from the custody of their biological mother in or around June 2000 and taken into the care and custody of Defendant D.C. Plaintiffs D.B. and T.B. were entirely dependant upon Defendants to provide them with, and/or ensure that they received, all of life's necessities and well being, including a reasonably safe environment in which to reside.

60.    The constitution imposes on the government an affirmative duty of care and protection of individuals taken into its care, custody, and/or control.  (*See, DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).  This includes children in foster care who have a right to be placed in a reasonably safe environment where they will be free from harm.  *LaShawn A. v. Dixon*, 762 F.Supp. 959, 992 (D.C. 1991).

61.    The care of foster children and the inspection of any potential foster homes, including for lead based paint hazards, is subject to specific regulation(s), and/or order(s) and/or standard(s).

62.    The initial, continuing, and unremedied exposure of Plaintiffs D.B. and T.B. to lead poisoning, inappropriate adult sex acts, and/or sexual abuse was in direct violation of any and all applicable regulation(s), order(s) and/or standard(s).

63.    Defendants have violated Plaintiffs D.B. and T.B.'s Federal and District of Columbia statutory rights and regulations, as well as, their Constitutional rights by having: placed, and maintained, them in a foster care placement despite known and/or knowable hazardous risks to their health, safety, and development; failed to make reasonable efforts to offer services that would have prevented the injuries set forth herein; repeatedly and over a protracted period of time having failed to take the necessary and/or required actions to ensure remediation of the health and safety threats to which

they had subjected Plaintiffs D.B. and T.B.; failed to remove Plaintiffs D.B. and T.B. from a known and/or knowable hazardous environment, and; failed to provide Plaintiffs D.B. or T.B. with proper care and/or adequate services.

64.    In addition to violating Plaintiffs' 5th Amendment Rights to life, liberty and personal security under the Constitution, Defendants have also violated their rights conferred *inter alia* under the Federal Adoption Assistance and Child Welfare Act, and; District of Columbia Municipal Regulation, Title 14, Section 707.3.

65.    At all times relevant herein, the District of Columbia, through DCRA and/or CFSA, received substantial funding through the federal Adoption Assistance and Child Welfare Act of 1980 (codified at 42. U.S.C. §§670-679 and 42 U.S.C. §§620-627), and the federal Child Abuse Prevention and Treatment Act (codified at 42 U.S.C. §§5101-5106).

66.    The federal Adoption Assistance and Child Welfare Act of 1980 requires that governmental agencies receiving funds under this act ensure that each child in foster care be maintained in foster family homes that can provide children with proper care and safety, including the requirement that the foster home(s) in which they are placed conform with the national standards.

67.    The federal Child Abuse Prevention and Treatment Act similarly confers various rights upon children who are known to Defendant D.C. through their involvement in the foster-care system, and furthermore sets forth requirements that governmental agencies receiving funds pursuant to this act.  Specifically, such agencies are required to maintain the personnel, procedures, and ability to initiate prompt investigations into reports of abuse and neglect and to take the necessary and appropriate steps to protect identified abused and/or neglected children.

68.     Similarly, the District of Columbia Prevention of Child Abuse and Neglect Act (codified as D.C. Code §§4-1301, *et. seq*.; D.C. Code §§4-1401 *et. seq*.; and D.C. Code §§16-2351) also confers rights upon children similarly situated to Plaintiffs D.B. and T.B., including, the requirement that children be removed from homes or other places when necessary to ensure their protection from conditions which are detrimental to their health and development.

69.     As a direct result of these violations, Plaintiffs D.B. and T.B. have been deprived of the opportunity for normal and healthy growth and development or a normal childhood, and they each continue to suffer irreparable harm, including, but not limited to severe cognitive and behavioral deficits for which they continue to require services and/or treatment.

70.     Plaintiff D.B. has had multiple psychological and educational evaluations as a result of severe mood and behavioral disorders.  In evaluations dating from March, 2003 through April, 2007, D.B. has been diagnosed and/or assessed as having a below average full scale IQ of 85; as being emotionally needy; having attachment problems; difficulty controlling his behavior; anxiety, anger problems, ADHD; various learning disorders; "clinically significant problems with emotional self-regulation and working memory, and milder problems with mental flexibility, impulsivity, organizing materials, planning, and self-monitoring."  D.B.'s evaluations have additionally noted that his "medical history is also significant for elevated blood lead levels."  Plaintiff D.B. has further had four psychological hospitalizations for suicidal and homicidal ideations, depression, and post-traumatic stress disorder since he was first placed in the custody of Defendant Milloy at the Property.

71. Plaintiff T.B. continues to require behavioral modification and management plans, occupational therapy to address fine motor skill deficiencies, speech-language therapy, psychotropic medication, psychological counseling, and specialized educational services.

72. Plaintiff T.B. has also been subjected to numerous evaluations and has been diagnosed with ADHD, poor academic development, and his medical history is significant for elevated blood lead levels.

## COUNT I
### Negligence

**(Defendants Golden, Jordan, Sanders, Earl Charlton, L.L. Charlton, Thomas D. Walsh, Inc., and Milloy)**

73. Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

74. At all times relevant herein, each Defendants named in this Count owed Plaintiffs a duty to act in accordance with applicable duties, standard(s), order(s), regulation(s) and/or obligation(s) to protect Plaintiffs from harm, including a duty to maintain a safe and hazardous free environment in which Plaintiffs D.B. and T.B. could reside.

75. Each Defendant named in this Count had a further duty to warn, inform, and/or remove Plaintiffs D.B. and T.B. from any known or knowable hazardous condition and/or dangerous individuals that existed at the Property.

76. Each Defendant named in this Count furthermore had a duty to remedy and/or ensure the remedy of all known or knowable hazardous conditions or dangerous environments to which Plaintiffs D.B. and T.B. were exposed in a timely, proper, and complete manner.

77.    In violation of their respective duties, each Defendant listed in this Count failed to properly maintain, remedy, resolve, warn, inform, protect, and/or remove Plaintiffs from, a known or knowable hazardous condition and/or dangerous individuals existing at the Property.

78.    In breach of their respective duties, Defendants Golden, Jordan, and Sanders failed to properly screen, evaluate and/or assess the foster care placement of Defendant Milloy or Defendant Milloy individually, prior to licensing her and/or the Property for foster care.

79.    In further breach of their respective duties, Defendants Golden, Jordan, and Sanders also failed to take the reasonable, necessary, and/or required actions to ensure the health, safety, and well-being of Plaintiffs D.B. and T.B. by properly assessing, evaluating, and/or monitoring their foster care placement with Defendant Milloy at the Property.

80.    Defendants Golden, Jordan, and Sanders additionally failed to provide Plaintiffs D.B. and T.B. with the necessary and required treatment for exposure to lead paint in a reasonable, timely, and/or appropriate manner.

81.    Each Defendant named in this Count knew or should have known that the aforementioned actions and/or inactions created an unreasonable risk of injury to Plaintiffs.

82.    Each Defendant named in this Count failed to act in a reasonable and prudent under the circumstances, and violated the standard of care that a reasonable and prudent person in the same or similar circumstances would have followed.

83.    As a direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiffs D.B. and T.B. have suffered extreme and

permanent neurological detriment, cognitive and behavioral deficits, pain, suffering, discomfort, emotional distress, mental anguish, medical expenses, and emotional injuries.

84.    As a further direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiff Taylor also suffered emotional distress, medical expenses and lost wages.

85.    The above injuries were caused solely and proximately by the negligence of each of the Defendants named in this Count without any contributory negligence on the part of Plaintiffs.

### COUNT II
### Gross Negligence

### (Defendants Golden, Jordan, Sanders, Earl Charlton, L.L. Charlton, Thomas D. Walsh, Inc., and Milloy)

86.    Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

87.    At all times relevant herein, each Defendants named in this Count owed Plaintiffs a duty to act in accordance with applicable duties, standard(s), order(s), regulation(s) and/or obligation(s) to protect Plaintiffs from harm, including a duty to maintain a safe and hazardous free environment in which Plaintiffs D.B. and T.B. could reside.

88.    Each Defendant named in this Count had a further duty to warn, inform, and/or remove Plaintiffs D.B. and T.B. from any known or knowable hazardous condition and/or dangerous individuals that existed at the Property.

89.    Each Defendant named in this Count furthermore had a duty to remedy and/or ensure the remedy of all known or knowable hazardous conditions or dangerous

environments to which Plaintiffs D.B. and T.B. were exposed in a timely, proper, and complete manner.

90.    Defendants Golden, Jordan, and Sanders furthermore had a duty to provide Plaintiffs D.B. and T.B. with the necessary and required treatment for exposure to lead paint in a reasonable, timely, and/or appropriate manner.

91.    In violation of their respective duties, each Defendant listed in this Count failed to properly maintain, remedy, resolve, warn, inform, protect, and/or remove Plaintiffs from, a known or knowable hazardous condition and/or dangerous individuals existing at the Property.

92.    In breach of their respective duties, Defendants Golden, Jordan, and Sanders failed to properly screen, evaluate and/or assess the foster care placement of Defendant Milloy or Defendant Milloy individually, prior to licensing her and/or the Property for foster care.

93.    In further breach of their respective duties, Defendants Golden, Jordan, and Sanders also failed to take the reasonable, necessary, and/or required actions to ensure the health, safety, and well-being of Plaintiffs D.B. and T.B. by properly assessing, evaluating, and/or monitoring their foster care placement with Defendant Milloy at the Property.

94.    Defendants Golden, Jordan, and Sanders additionally failed to provide Plaintiffs D.B. and T.B. with the necessary and required treatment for exposure to lead paint in a reasonable, timely, and/or appropriate manner.

95.    The acts and/or omissions of each Defendant named in this Count involved an unreasonably high probability of causing substantial injury to Plaintiffs' D.B. and T.B.

96.     At the time of their actions and/or inactions, each Defendant named in this Count knew or should have known the risk of harm their actions and/or inactions presented to Plaintiffs D.B. and T.B.

97.     Each of these Defendants' actions and/or inactions were unreasonable under the circumstances and/or constituted a conscious indifference to the rights, safety, and/or welfare of Plaintiffs D.B. and T.B.

98.     Defendants knew or should have known that the aforementioned actions and/or inactions created an unreasonable risk of injury to Plaintiffs.

99.     Defendants failed to act reasonably and prudent under the circumstances and violated the standard of care that a reasonable and prudent person in the same or similar circumstances would have followed.

100.    As a direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiffs D.B. and T.B. have suffered extreme and permanent neurological detriment, cognitive and behavioral deficits, pain, suffering, discomfort, emotional distress, mental anguish, medical expenses, and emotional injuries.

101.    As a further direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiff Taylor also suffered emotional distress, medical expenses and lost wages.

102.    The above injuries were caused solely and proximately by the negligence of each of the Defendants named in this Count without any contributory negligence on the part of Plaintiffs.

103.    The above injuries were caused solely and proximately by the negligence Defendants Golden, Jordan, and Sanders, acting within the course of their respective

employment and/or agency with Defendant D.C., without any contributory negligence on the part of Plaintiffs.

<u>**COUNT III**</u>
**Breach of Implied Warranty of Habitability**

**(Defendants Earl Charlton, L.L. Charlton, and Thomas D. Walsh, Inc.)**

104.    Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

105.    At all times relevant herein, each Defendant named in this Count was an owner, licensee, and/or agent of the Property.

106.    At all times relevant herein, each Defendant named in this Count knew or should have known that Plaintiffs D.B. and T.B. were children under the age of eight (8) years of age and were residing or spending a substantial portion of time at the Property.

107.    At all times relevant herein, each Defendant named in this Count permitted Plaintiffs D.B and T.B. to occupy and/or reside at the property.

108.    Each Defendant named in this Count knew or should have known that lead-based paint hazards existed at the Property at the time Plaintiffs D.B. and T.B. occupied and/or resided at the Property.

109.    At all times relevant herein, each Defendant named in this Count had a duty to ensure that the Property was in a clean, safe, sanitary, and habitable condition; free of any lead-based paint hazards.

110.    Each Defendant listed in this Count had a duty to maintain the property in a safe and secure manner and to warn Plaintiffs of any known or knowable hazards which existed on the property.

111.    Each Defendant named in this Count also owed Plaintiffs D.B. and T.B to protect them from known and/or knowable harm while residing at the Property, including, but not limited to, a duty to protect them from exposure to lead-based paint.

112.    Each Defendant named in this Count furthermore had a duty to remedy and/or ensure the remedy of all known or knowable hazardous conditions to which Plaintiffs D.B. and T.B. were exposed to at the Property, including , but not limited to, lead-based paint hazards and to do so in a timely, proper, and complete manner.

113.    In violation of their respective duties, each Defendant listed in this Count failed to properly maintain, remedy, resolve, warn, inform, protect, and/or remove Plaintiffs from any known or knowable hazardous conditions at the Property.

114.    As a direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiffs D.B. and T.B. have suffered extreme and permanent neurological detriment, cognitive and behavioral deficits, pain, suffering, discomfort, emotional distress, mental anguish, medical expenses, and emotional injuries.

115.    As a further direct and proximate result of the acts and/or omissions of each Defendant named in this Count, Plaintiff Taylor also suffered emotional distress, medical expenses and lost wages.

116.    The above injuries were caused solely and proximately by the negligence of each of the Defendants named in this Count without any contributory negligence on the part of Plaintiffs.

<u>**COUNT IV**</u>
**42 U.S.C. § 1983 Deprivation of Fifth Amendment Rights**
**Life, Safety, and Personal Security**

**(Defendants D.C., Golden, Jordan, and Sanders)**

117.    Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

118.    This count arises under 42 U.S.C. § 1983 and the Fifth Amendment to the United States Constitution, and is alleged against Defendants D.C., Golden, Jordan, and Sanders.

119.    At all times relevant herein, Defendant Golden was acting within the scope and authority of her employment with Defendant D.C. and as such acted under the color of the laws of the District of Columbia.

120.    At all times relevant herein, Defendant Jordan was acting within the scope and authority of his employment with Defendant D.C. and as such acted under the color of the laws of the District of Columbia.

121.    At all times relevant herein, Defendant Sanders was acting within the scope and authority of her employment with Defendant D.C. and as such acted under the color of the laws of the District of Columbia.

122.    At all times relevant herein, Defendants Golden, Jordan, and Sanders had decision making authority to license Defendant Milloy as a foster parent and/or the Property as a foster care facility, and additional decision making authority regarding the placement, maintenance, and/or removal Plaintiffs D.B. and T.B. from Defendant Milloy's care and/or the Property.

123.    At all times relevant herein, Plaintiffs D.B. and T.B. were minor children in Defendant D.C.'s foster care system and/or were committed into the custody, control, and care of Defendants.

124.    At all times relevant herein, Plaintiffs D.B. and T.B. enjoyed the protections of the Fifth Amendment to the U.S. Constitution, prohibiting *inter alia* deprivation of their rights to life, liberty and personal security.

125.    Through the subject incidents, Defendants D.C., Defendant Golden, Defendant Jordan, and Defendant Sanders were subject to a constitutional obligation to take all reasonable measures to guarantee Plaintiffs D.B. and T.B.'s safety and to protect them from harm.

126.    In violation of their obligations, Defendants D.C., Golden, and Sanders deprived Plaintiffs of their of their Fifth Amendment rights by subjecting them to a known, substantial risk of serious harm and risk of injury, and/or acted with deliberate indifference to these rights.

127.    Defendants D.C., Golden, and Sanders furthermore failed to make reasonable efforts to ensure the health and welfare of Plaintiffs D.B. and T.B. by permitting them to be placed in, and remain for an unreasonably long period of time in, a dangerous environment while in their custody.

128.    Defendants D.C., Golden, and Sanders' above stated actions and/or inactions concerning the failure to protect Plaintiffs from the known exposure to a severe lead based paint hazard and the dangerous environment that existed at the Property constitutes misconduct that was so unreasonable, reckless and outrageous, and in blatant violation of Plaintiffs' established constitutional rights to be free from unwarranted deprivations of life, safety and personal security as to shock the conscience.

129.    As a direct and proximate result of the foregoing misconduct, Plaintiffs D.B. and T.B. have each suffered severe cognitive and behavioral deficits, and experienced, and will continue to experience extreme and ongoing pain, suffering, discomfort, emotional distress, mental anguish, medical expenses and bodily injuries for which the Defendants D.C., Golden, Jordan, and Sanders are liable.

130.    Because Defendants D.C., Golden, Jordan, and Sanders conduct reflects a reckless disregard for the deprivation of Plaintiffs' due process rights to life, safety and personal security, Defendants are also liable for damages.

**COUNT V**
**Civil Rights Violation under 42 U.S.C. § 1983 -**
**Deliberate Indifference to Social Worker Training, Supervision and Retaining**

**(Defendants D.C., and Golden)**

131.    Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

132.    This count arises under 42 U.S.C. § 1983, and is alleged against the above referenced Defendants for the municipal and/or *de facto* policy of insufficient training, supervision and/or retaining of its social workers.

133.    Defendants D.C. and Golden have long been on notice of a pattern of deficient selection, training, supervision and retaining of their social workers in general, and particularly with respect to the care, time, and attention they afford and/or are able to afford to children in their custody and control, such that social workers have been overloaded with an excessive case load, provided with inadequate case information and/or resources, and improperly supervised.

134.    Plaintiffs D.B. and T.B.'s injuries proximately resulted from a series of instances of social worker misconduct linked to, and arising from, a *de facto* District of

Columbia policy of deficient selection of, training, supervising, and retaining of its social workers sufficient to shock the conscience with respect to social workers, and the care, time, attention, and protection provided to children in their care.

135.    In view of the foregoing, Defendant D.C.'s failure to improve, remedy, supplement or otherwise upgrade the training and supervision of its social workers constitutes a deliberate indifference and/or a *de facto* policy on the part of Defendant D.C. with respect to the selection of, training, supervising, and retaining of its social workers in general, and particularly with respect to care, time, and attention and the protection provided to children in their care.

136.    In view of the foregoing, Defendants D.C. and Defendant Golden's failure to improve, remedy, supplement, obey, or otherwise follow the training, whatever it may be, given to their social workers constitutes a deliberate indifference on the part of Defendants D.C. and Golden with respect to the appropriate conduct of social workers, and particularly with respect to care, time, and attention and the protection provided to children in their care.

137.    Defendants D.C. and Golden's actual and/or *de facto* policy of deliberate indifference toward the selection of, training, supervision and retaining of their social workers, and/or Defendant Sanders' failure to follow policy, including the removal of children from foster homes with unremedied dangers, including, but not limited to, lead based paint hazards,  amounts to, and constitutes, a deliberate indifference to the constitutional rights of the Plaintiff D.B. and T.B., including their clearly established right not to be deprived of safety without due process of law under the Fifth Amendment to the United States Constitution.

138.    Such deliberate indifference on the part of Defendant D.C. with respect to the selection of, training, supervision and retaining of its social workers and/or Defendant Sanders' failure to obey or follow policies, including removal of children from dangerous foster care placements was a proximate cause of the Plaintiffs' injuries as set forth herein.

139.    As a proximate result of the above stated wrongful selection of, training, supervision and/or retention of social workers by Defendant D.C. and Defendant Golden; and/or as a further proximate result of Defendant Sanders' failure to follow any policies that may have been put forth by Defendant D.C., Plaintiffs D.B. and T.B. were deprived of their health, safety, and well being, without due process of law, and the above stated deliberate indifference on the part of the Defendants constitutes a violation of the Plaintiff D.B. and T.B.'s constitutional rights to be placed in a reasonably safe environment while in the custody and control of Defendant D.C. through its foster care system, and to furthermore not to be deprived of health and welfare without due process of law under the Constitution.

140.    As a proximate result of the foregoing deliberate indifference on the part of Defendants, Plaintiffs D.B. and T.B. were subjected to an unsafe and/or hazardous living environment which caused them each to suffer extreme, horrific pain and suffering and mental anguish.

## COUNT VI
### Punitive Damages

**(Defendants Golden, Jordan, Sanders, Earl Charlton, L.L. Charlton, Thomas D. Walsh, Inc., and Milloy)**

141.    Plaintiffs restate and reallege each and every allegation set forth above in this Complaint as if fully set forth herein.

142.    Defendants named in this Count acted with actual malice toward Plaintiffs and/or with conduct which under the circumstances amounts to willful, wanton, and/or conscious disregard of the Plaintiffs' rights, such that an award of punitive damages to punish Defendants for their actions and to serve as an example to prevent others from acting in a similar manner is appropriate.

143.    At the time of each event set forth herein the Defendants named in this Count knew the likely danger their actions and/or inactions presented to Plaintiffs and/or willfully disregarded Plaintiffs' safety and well being with full knowledge of the harmfulness of their actions.

144.    Despite Defendants knowledge of the harmfulness of their actions and/or inactions, each of these Defendants intentionally took the precise actions and/or inactions they knew presented an extremely high risk of injuring Plaintiffs in the manner set forth herein.

145.    These Defendants injured Plaintiffs in the precise manner likely to occur as a direct result of their intentional, grossly negligent and/or reckless actions and/or inactions.  Defendants' actions and/or inactions set forth herein demonstrate a callous indifference and intentional disregard for the health, safety, and welfare of Plaintiffs.

**WHEREFORE,** Plaintiffs, each respectfully request judgment against Defendants in an amount to be determined at trial, but believed to be at least ten million dollars ($10,000,000.00) in compensatory damages and at least twenty five million dollars ($25,000,000.00) in punitive damages, plus costs of suit, attorneys fees, and such other and further relief as this Court deems just and proper.

Dated this 9th day of April, 2008        Respectfully submitted,

**TAYLOR SYLLA & AGIN, LLP**

<u>/s/ Marshall W. Taylor</u>
Marshall W. Taylor, No. 454615
Taylor Sylla & Agin, LLP
The Commercial National Bank Building
1420 New York Avenue, NW
Suite 810
Washington, DC 20005
Phone: (202)783-7830
Email: <u>mtaylor@tsafirm.com</u>
***Attorneys for Plaintiffs***

\*\*\*

## JURY DEMAND

Plaintiff, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands trial by jury of all issues in this matter.

Dated this 9th day of April, 2008        Respectfully submitted,

**TAYLOR SYLLA & AGIN, LLP**

<u>/s/ Marshall W. Taylor</u>
Marshall W. Taylor, No. 454615
Taylor Sylla & Agin, LLP
The Commercial National Bank Building
1420 New York Avenue, NW
Suite 810
Washington, DC 20005
Phone: (202)783-7830
Email: <u>mtaylor@tsafirm.com</u>
***Attorneys for Plaintiff***