**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FELICIA TAYLOR,** *et al.,*

**Plaintiffs,**

v.

**DISTRICT OF COLUMBIA,** *et al.,*

**Defendants.**

**Civil Action No. 08-cv-578 (BJR)**

**ORDER AND MEMORANDUM**
**OPINION ON MOTION TO DISMISS**

This case is before the court on a Motion to Dismiss filed by defendant the District of

Columbia and defendants Golden, Jordon, Sanders, Sweeney, Abunaw, Walks, and Roberts

(hereinafter "District employees") [dkt. #164] ("*Mot. to Dismiss.*").[1]  This court, having reviewed

the motion and the relevant documents in support of and opposition thereto, hereby grants the

motion in part and denies it in part.

**I.      BACKGROUND**

This lawsuit was filed in 2008.  Plaintiffs allege that plaintiffs D.B. and T.B., who are

minor children (hereinafter "minor plaintiffs"), experienced lead poisoning as a result of their

placement in a foster home by the District of Columbia and its employees. *Mot. to Dismiss* at 3.

The minor plaintiffs resided in the foster home of Annie Malloy from June 2000 to March 2003,

during which time plaintiffs claim the District of Columbia and District employees knew or

should have known of the inappropriate conditions at the foster home, including lead paint

---

[1] Also before the court is *Plaintiffs' Motion for Reconsideration* [dkt. #179], which was filed in response to
Magistrate Judge Kay's Minute Order on September 12, 2010, which granted an Emergency Motion to Stay
Discovery until the Motion to Dismiss was resolved.  As this Memorandum Opinion and Order will resolve the
Motion to Dismiss, the Motion for Reconsideration is now moot.

contamination. *Third Amended Complaint* [dkt. #159] ¶¶ 20-39.  Plaintiffs allege that T.B. and

D.B. have elevated blood lead levels resulting from their exposure to the lead-based paint in the

foster home. *Id.* ¶¶ 40-42.  Plaintiffs further allege that T.B. and D.B. have suffered neurological

damage and cognitive defects stemming from their exposure.  *Id.* ¶ 101.  Plaintiff Felecia Taylor,

who took custody of the minor plaintiffs after they were removed from the home in the District

of Columbia, claims that she has suffered emotional distress, medical expenses, and lost wages.

*Id.* ¶ 102.  Plaintiffs bring claims of civil rights violations against the District of Columbia and

the District employees under 42 U.S.C. § 1983 (Counts IV and V), and claims for common law

negligence and gross negligence against the District employees, along with a claim for punitive

damages (Counts I, II, and VI).[2] *Id.* ¶¶ 91-169.

This case was originally assigned to Judge Kennedy.  In a hearing held on March 11,

2010, Judge Kennedy granted in part and denied in part a Motion to Dismiss Plaintiffs' Second

Amended Complaint or, in the Alternative, for Summary Judgment, filed by the District

employees (with the exception of Roberts, who was not yet named in the lawsuit). *Order* [dkt.

#147] at 1.  Judge Kennedy made clear that he was resolving that motion as a motion for

summary judgment:  "Assuming for the sake of analysis that Taylor has adequately pled a

Section 1983 cause of action against the supervisors and the social workers, the Court concludes

that Taylor has failed to produce evidence sufficient to overcome defendant's motion for

summary judgment." *Transcript of Proceedings* [dkt. #186] ("*Transcript*") at 7.  Specifically,

Judge Kennedy granted the motion as it related to plaintiffs' federal claims against the District

employees, but denied it to the extent it requested that the court decline to exercise supplemental

jurisdiction over the remaining common law claims against the District employees. *Id.*

---

[2] Plaintiffs also bring the common law claims against default defendant Annie Malloy.

Following Judge Kennedy's decision, on May 3, 2010, Magistrate Judge Kay issued an opinion on plaintiffs' Motion for Leave to Amend Complaint, which sought the addition of defendants Nell Roberts and five Doe defendants to plaintiffs' complaint. *See Memorandum Order* [dkt. #158].  Judge Kay denied leave to add Roberts to the federal claims in the Third Amended Complaint as futile, but granted leave to add her to plaintiffs' common law claims:

> To the extent Plaintiffs wish to pursue the same federal claims
> against Ms. Roberts as they did against District Defendants, these
> claims would not survive a motion to dismiss for the reasoning
> given by the trial court in its oral ruling on District Defendant's
> motion to dismiss. (*See* Order dated [147] 03/12/2010.)  However,
> to the extent Plaintiffs wish to pursue the common law claims
> against Ms. Roberts, the proposed amendment to add these
> Plaintiffs would not be futile.

*Id.* at 9.

Judge Kay denied leave to add the Doe defendants to any of plaintiffs' claims. *Id.*

On May 28, 2010, defendants filed the immediate Motion to Dismiss the Third Amended Complaint.  This case was re-assigned to this court on October 18, 2011. *Reassignment of Civil Case* [dkt. #184].

## II.     LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Ambiguities must be resolved in favor of the plaintiffs, giving them the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint.  *See id.*

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiffs'

allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the alleged misconduct." *Aschroft v. Iqbal*, 556 U.S.

662, ___, 129 S. Ct. 1937, 1949 (2009).  "This amounts to a 'two-pronged approach' under

which a court first identifies the factual allegations entitled to an assumption of truth and then

determines 'whether they plausibly give rise to an entitlement of relief.'" *Matthews v. District of*

*Columbia*, 730 F. Supp. 2d 33, 35 (D.D.C. 2010).

 "The notice pleading rules are not meant to impose a great burden on a plaintiff." *Id.*  The

pleading standard in Federal Rule of Civil Procedure 8 does not require "detailed factual

allegations." *Iqbal*, 129 S. Ct. at 1949.  However, "[a] pleading that offers 'labels and

conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does

the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Id.*

 Because the court's review of a Rule 12(b)(6) motion is based upon consideration of the

allegations contained in the operative complaint, the court will not consider extraneous

documents attached or referenced by any party, or additional factual assertions contained therein,

except under limited circumstances.  *See generally Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d

45, 46 (D.D.C. 2009); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).[3]

---

[3] The court notes that defendants attached declarations and exhibits to their reply brief [dkt. #172], while plaintiffs made reference to discovery that does not appear in their complaint. *Plaintiffs' Memorandum in Opposition to Defendants District of Columbia, Golden, Jordan* [sic]*, Sanders, Sweeney, Abunaw, Walks, and Roberts Motion to Dismiss* [dkt. #169] ("*Opp.*") at 16.  As the court is considering this motion under Rule 12(b)(6), these outside documents and references have not been considered.

## III.   DISCUSSION

### A.   Federal Claims Against the Individual District Employees

As set forth above, in ruling on the Second Amended Complaint, Judge Kennedy granted summary judgment to the defendants as to any federal claims asserted against the individual District employees (excluding Roberts, who was not named at that time).  The judgment entered in favor of these defendants was entered with prejudice.  As to defendant Roberts, in determining whether to grant leave to add parties to the Third Amended Complaint, Judge Kay ordered that plaintiffs could not pursue the federal claims asserted against defendant Roberts because it would be futile.  Therefore, Roberts has never been a defendant to the federal claims.[4]

Notwithstanding the inclusion of the federal claims against these defendants in the Third Amended Complaint, the prior decisions operate as the law of the case.  A review of plaintiffs' Third Amended Complaint reveals that, of the new factual allegations in the Third Amended Complaint, none persuade the court to reach an outcome any different from Judge Kennedy's well-reasoned decision.  Judge Kennedy determined on summary judgment that plaintiffs' factual allegations failed to rise to the high standard required to sue an individual municipal officer under 28 U.S.C. § 1983.  *See, e.g., Elkins v. District of Columbia*, 636 F. Supp. 2d 29, 33 (D.D.C. 2009).  Furthermore, Judge Kay, in his decision on defendant Roberts, held that the federal claims against her "would not survive a motion to dismiss for the reason given by the trial court." *Memorandum Order* [dkt. #158].  Clearly, Judge Kay, who granted in part plaintiffs' Motion for Leave to Amend, found Judge Kennedy's conclusions as to the Second Amended Complaint to be equally applicable to the Third Amended Complaint.

Accordingly, the only arguments that remain at issue in relation to the Motion to Dismiss

---

[4] While the parties do not raise the issue of the Doe defendants, the court feels it is worth reiterating that Judge Kay denied leave to add Does #1-5 to any of plaintiffs' claims.

are the validity of the federal claims asserted against defendant District of Columbia and the

validity of the common law claims asserted against the individually named defendants.

**B.      Federal Claims Against the District of Columbia**

Defendants argue in their Motion to Dismiss that plaintiffs' claims against the District of

Columbia under Section 1983 are insufficiently pled.  Defendants object that Counts IV and V

fail to allege any custom, policy, or practice that was the purported moving force behind the

alleged deprivation of plaintiffs' rights, and allege "nothing more than the formulaic pleading

jargon." *Dft.'s Mot.* at 7.   Defendants claim that "plaintiffs allege *no* facts to support the

allegations that District maintained the unlawful policies or otherwise engaged in the misconduct

alleged," nor, according to defendants, do plaintiffs identify "what particular policy, practice, or

District customs are actually at issue in the case." *Id.* (emphasis in original).

Under the Supreme Court's decision in *Monell v. Dep't of Social Services of the City of*

*New York*, 436 U.S. 658 (1978), a local government may be sued under Section 1983 "when

execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.  The

state or municipality has affirmative duties of care and protection with regard to particular

individuals only under very limited circumstances; specifically, "when the State takes a person

into its custody . . . the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and well-being." *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*,

489 U.S. 189, 199-200 (1989) (citing *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982)).  In

*DeShaney*, the Supreme Court held that the state could not be liable for harms suffered by a

young boy, who was monitored by social services, at the hands of his father while he was in his

father's custody, because his father was by no means a state actor. *Id.* at 201.  The Court did note,

however, that, "[h]ad the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *Id*. at 201 n.9.  While the Court expressed no view on the validity of the analogy, it noted that several Circuit courts had reached such a conclusion. *Id*.

In this Circuit, "[a] child in foster care is in custody for substantive Due Process purposes and a State (or the District) owes the child a constitutional duty of care." *Cohen v. District of Columbia*, 744 F. Supp. 2d 236, 242 (D.D.C. 2010) (citing *Smith v. District of Columbia*, 413 F.3d 86, 95 (D.C. Cir. 2005)).  *See also Smith*, 413 F.3d at 95 ("[W]here the government assumes full responsibility for a child by stripping control from the family and placing the child in a government-controlled setting, the government assumes a duty for the child's welfare.").

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*," and "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

The consideration of whether a plaintiff has stated a claim for municipal liability requires a two-step inquiry. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  First, the plaintiff must have stated a claim for a predicate constitutional violation. *Id.*  Second, the complaint must state a claim that a custom or policy of the municipality caused the violation. *Id.*  Under this second prong, the court "must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation." *Id.* (internal citations omitted).  The *Baker* court set forth a number of ways in which

7

"policy" could be set by a municipality to cause it to be liable under Section 1983:

> [T]he explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom;" *or, the failure of the government to respond to a need (for example, the training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations*.

*Id.* (internal citations omitted) (emphasis added).

A determination of "deliberate indifference" is made "by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard." *Id.* The standard requires that, in the face of "actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). *See also LaShawn A. v. Dixon*, 762 F. Supp. 959, 997 (D.D.C. 1991) ("That the system's outrageous deficiencies may be the result of staff shortages and excessive caseloads is no help to defendants, whose knowledge of these problems and refusal to take action confirm that the problems are not isolated incidents, but amount to 'a persistent, pervasive practice.'").

Plaintiffs' complaint claims a number of facts with regard to the alleged misconduct by the District of Columbia in the foster placement of T.B. and D.B. from 2000 to 2003. Plaintiffs allege that, during the period T.B. and D.B. were placed with Malloy, she was licensed only to care for foster children ages seven to twelve years old; at the time of their initial placement, T.B. was eleven months old, while D.B. was 27 months old. *Third Amended Complaint* ¶ 29. Plaintiffs further allege that T.B. and D.B. were placed with Malloy without the necessary completion of inspections, home assessments, or adult background checks, and, most critically to the injuries alleged in this case, without a lead based paint inspection or the issuance of a lead

based paint clearance inspection certificate. *Id.* ¶ 31.  Plaintiffs assert that lead inspections of the

Malloy residence were conducted by the District of Columbia Department of Health in

September 2000 and September 2002. *Id.* ¶¶ 33, 37.  Furthermore, plaintiffs state, in both

November 2000 and October 2002, the Department of Health issued written "Notices of Defect"

specifically stating that lead based paint hazards had been identified on the property. *Id.* ¶¶ 34,

38.  Plaintiffs claim that, while both Notices of Defect required remediation of the hazard within

ten days, there was no compliance, and Malloy's home was never certified as safe. *Id.* ¶ 47.  In

the meantime, plaintiffs state that the minor plaintiffs' lead levels were followed on a regular

basis while they were placed with Malloy, and they each showed "sustained blood lead levels for

2-4 times the upper normal limits." *Id.* ¶ 42.  Plaintiffs further allege that the District of

Columbia "failed to conduct the necessary and appropriate review, assessment and/or verification

regarding the licensing of Defendant Malloy personally and/or the Property." *Id.* ¶ 68.  Plaintiffs

also claim that, according to the Child and Family Services Administration's own History of

Lead Report, as late as April 3, 2004, the agency acknowledged that the foster home licensing

requirements for the Department of Consumer and Regulatory Affairs "[remained] unknown." *Id.*

    Defendants' motion does not question whether plaintiffs have alleged a constitutional

violation, but focuses on the second prong of the *Baker* test, whether plaintiffs state a claim that a

custom or policy of the municipality caused the violation.  Plaintiffs allege in both Counts IV and

V that defendants acted with deliberate indifference to plaintiffs' Fifth Amendment rights. *Id.* ¶¶

149, 160.  Plaintiffs have alleged facts showing that, over three years, T.B. and D.B. were placed

in a home with a foster parent who was not properly licensed, where the proper lead paint

inspections did not take place until after their placement, where the inspections resulted in

Notices of Defect, and where the lead paint defect was never remedied.  Plaintiffs have further

alleged that, while in the care of the District of Columbia, T.B. and D.B. exhibited highly

elevated levels of lead in their blood tests.  Given the amount of time, the number of instances of

alleged misconduct, and the number of District employees involved, it is "plausible," *Iqbal*, 129

S. Ct. at 1949, that the injuries to plaintiffs resulted from a District policy of failing to train or

supervise its employees.

In essence, plaintiffs have alleged both specifically and inferentially that policies or

practices existed which led to the deprivation of their civil rights.  Plaintiffs have created a

plausible inference that the District of Columbia, through its agents, failed to respond to a need to

train or supervise its employees, to an extent that shows, if proven, a deliberate indifference to

the risk that not addressing these needs would result in constitutional violations.  Under the

standards set forth in *Baker*, that is enough.  Given the specifics of the allegations, and the

assumption on a motion to dismiss that the factual allegations are true, the court finds that

plaintiffs have sufficiently alleged facts supporting plausible claims against the District of

Columbia.

### C. Common Law Claims Against the District Employees

Defendants do not address the common law claims directly in their Motion to Dismiss,

but raise their argument concerning the sufficiency of the negligence claims in their reply brief.

*District Defendants Reply to Plaintiffs' Opposition to Their Motion to Dismiss or in the*

*Alternative for Summary Judgment* [dkt. #172] ("*Dft.'s Reply*") at 18.  The court first notes that

defendants' failure to address the sufficiency of the common law claims in their Motion to

Dismiss provides a sufficient reason to ignore said argument.  "[I]t is a well-settled prudential

doctrine that courts generally will not entertain new arguments first raised in a reply brief."

*Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008).

That said, as plaintiffs were able to respond to the argument in a surreply, the court will consider it.[5]

Defendants argue that the common law claims should be dismissed, as "District Defendants had no personal involvement in any of the facts and circumstances underlying plaintiffs' case," and there is no factual indication that the District employees were connected with the underlying actions in any way. *Dft.'s Reply* at 18. Defendants also noted that the District employees cannot be vicariously liable for subordinates unless they "directed, approved, or encouraged the tortious acts." *Id.*

Plaintiffs have alleged common law claims of negligence and gross negligence against the District employees, in addition to demanding punitive damages. Specifically, plaintiffs allege that the District employees had a duty to maintain a safe and hazard-free environment for the minor plaintiffs, along with a duty to warn minor plaintiffs, remove them from hazardous conditions, or to remedy the hazardous conditions in a timely manner. *Third Amended Complaint* ¶¶ 92-94. Plaintiffs allege that the District employees violated and breached their duty by failing to take reasonable or necessary actions to ensure the health, safety, and well-being of the minor plaintiffs, by failing to properly monitor or evaluate their foster care placement with Malloy, and by failing to provide the minor plaintiffs with the timely treatment for lead exposure. *Id.* ¶¶ 97-98. Plaintiffs claim that the District employees knew or should have known that their failures to act created an unreasonable risk of injury to the plaintiffs, and that they failed to act in a

---

[5] Defendants argue at length in their Motion to Dismiss as to whether the individual District employees have been sued in their individual or official capacities. *Mot. to Dismiss* at 8-10. As plaintiffs cannot proceed with their federal claims against these defendants, resolution of this issue is no longer necessary. To the extent that defendants' argument could interpreted to suggest that the common law claims have not been asserted against the District employees in their individual capacities, the argument is rejected. This court points to Judge Kennedy's hearing on summary judgment, wherein he stated: "I note here that it was at the motions hearing that Taylor's counsel clarified that she indeed intended to sue the District employees in their individual capacity." *Transcript* at 5. Plaintiffs also clarify their intent to sue the District employees in their individual capacities at length in their brief. *Opp.* at 17-25.

reasonable and prudent manner under the circumstances. *Id.* ¶¶ 99-100.  Plaintiffs allege that

plaintiffs' injuries (including the health consequences experienced by the minor plaintiffs

following lead exposure) were directly and proximately cause by the acts and failures to act by

the District employees. *Id.* ¶¶ 101-02.

"In order to prevail on a negligence cause of action, the plaintiff must process 'the

applicable standard of care, a deviation from that standard by the defendant, and a causal

relationship between that deviation and the plaintiff's injury.'"  *Scales*, 973 A.2d at 730 (quoting

*Evans-Reid v. D.C.*, 930 A.2d 930, 937 n.6 (D.C. 2007)).  The District of Columbia Court of

Appeals has defined "gross negligence" as "the failure to exercise even slight care," and "such

negligence as would shock fair-minded men." *District of Columbia v. Walker*, 689 A.2d 40, 44

(D.C. 1997) (quoting *Shea v. Fridley*, 123 A.2d 358, 363 (D.C. 1956)).  *See also id.* ("[I]t can be

said that the term 'gross negligence' . . . requires such an extreme deviation from the ordinary

standard of care as to support a finding of wanton, willful, and reckless disregard or conscious

indifference for the rights and safety of others.") (defining the term "gross negligence" as it

appears in D.C. Code § 2-412, concerning governmental immunity for negligent operation of

vehicles by District employees).

The standard of care in each District employee's case would be that of a reasonable

person holding the position that each defendant held.  As noted above, under the *Twombly* and

*Iqbal* standards, a complaint must plead sufficient facts, taken as true, to provide "plausible

grounds" that discovery will reveal evidence to support the plaintiffs' allegations. *Twombly*, 550

U.S. at 570.  There must be sufficient factual content to allow the court "to draw the reasonable

inference that the defendant is liable for the alleged misconduct." *Iqbal*, 129 S. Ct. at 1949.  It is

not enough for the pleading to offer a "formulaic recitation of the elements of a cause of action." *Id.*

This court finds that plaintiffs have included sufficient facts in their Third Amended Complaint for their common law claims to survive a motion to dismiss. Plaintiffs provide sufficiently detailed descriptions of the duties of the individual District employees, along with detailed descriptions of how they are alleged to have failed those duties and a causal connection between their failure and plaintiffs' harm. Viewing the factual allegations in the light most favorable to plaintiffs, the court finds that plaintiffs have sufficiently alleged facts supporting plausible negligence and gross negligence claims against the District employees.[6]

## IV.    CONCLUSION

It is, therefore, hereby,

**ORDERED** that defendants' Motion to Dismiss is GRANTED as to the federal claims against District employees Golden, Jordon, Sanders, Sweeney, Abunaw, and Walks. These District employees were dismissed from the case under Judge Kennedy's ruling on summary judgment. It is further, hereby,

**ORDERED** that defendants' Motion to Dismiss is DENIED AS MOOT as to the federal claims against District employee Roberts. Nell Roberts was never added as a defendant to the federal claims. It is further, hereby,

**ORDERED** that defendants' Motion to Dismiss is otherwise DENIED. Plaintiffs may proceed with their federal claims against the District of Columbia and their common law claims against individual District employees Golden, Jordon, Sanders, Sweeney, Abunaw, Walks, and

---

[6] Defendants attempted to convert their Motion to Dismiss into a Motion for Summary Judgment in their reply brief. *Dft.'s Reply* at 1 ("*District Defendants Reply to Plaintiffs' Opposition to Their Motion to Dismiss or in the Alternative for Summary Judgment*"). The court will not allow them to do so.

Roberts.  It is further, hereby,

ORDERED that *Plaintiffs' Motion for Reconsideration* [dkt. #179] is DENIED AS

MOOT.  Discovery in this case has been stayed only until the court rules on defendants' Motion

to Dismiss, which is effectuated by this Order.  Finally, it is, hereby,

ORDERED that defendants will file an Answer to plaintiffs' Third Amended Complaint

within fourteen (14) days of this Order. Fed. R. Civ. P. 12(a)(4)(A).  Within fourteen (14) days of

defendants' submission, parties will meet and confer.  Within ten (10) days of that meeting,

parties shall jointly submit to the court a status report outlining (1) what issues remain; (2) what

discovery remains to be conducted; (3) a proposed schedule for discovery; (4) a proposed

schedule for any additional summary judgment motions; and (5) a proposed date for trial.

**SO ORDERED.**

January 17, 2012

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE